UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

URBANO DE LA CRUZ-VALLES,

Defendant.

NO. CR-15-2018-LRS-1

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS CASE AND EXCLUDING SPEEDY TRIAL ACT TIME**

**BEFORE THE COURT**, at the scheduled pretrial conference on May 7, 2015, is Defendant Urbano De La Cruz-Valles's Motion to Dismiss the Indictment, ECF No. 21, filed April 8, 2015. Assistant United States Attorney Shawn Anderson appeared on behalf of the Government; Alison Guernsey appeared on behalf of Defendant De la Cruz-Valles.

After considering the written and oral arguments of the parties, the court indicated Defendant's Motion to Dismiss Case would be taken under advisement.

**A. Brief Summary of Facts**

On September 6, 2013, Defendant Urbano De la Cruz-Valles, pleaded guilty in Yakima County Superior Court to an Amended Information charging Assault in the Second Degree – Domestic Violence, in

violation of RCW 9A.36.021(1)(c) and 10.99.020.[1] The charging document alleged that the crime involved an intentional assault, with a deadly weapon, against a family or household member.[2] Defendant was sentenced to six months imprisonment, to be followed by a term of community custody.[3] As the result of the conviction, Defendant was placed in removal proceedings.

On November 4, 2013, the Defendant received a Notice to Appear before an immigration judge (IJ) in Tacoma, Washington.[4] He was alleged to be subject to removal based on being convicted of, or admitting to, a crime of moral turpitude or an attempt to commit such a crime, as described above. *Id.* The I-862 Form gave Defendant notice that he could have representation and provided a list of organizations/attorneys offering free legal information. *Id.* The I-862 Form also stated that Defendant could present the testimony of any witnesses and had the opportunity to present evidence on his own behalf. *Id.* The Notice, at least as to the time and place to appear and consequences of not appearing, was provided orally in Spanish. *Id.*

On December 10, 2013, a deportation hearing took place before the IJ in Tacoma, Washington. ECF No. 22. The record from that hearing

---

[1]ECF No. 25-1.

[2]ECF No. 25-3. The crime was a "most serious offense" or "strike" under Washington law. RCW 9.94A.030.

[3]ECF No. 25-3.

[4]ECF No. 21-1 (Form I-862, dated November 4, 2013).

indicates Defendant was among multiple aliens that started in a group proceeding. *Id.* Defendant was not represented by counsel. *Id.* Defendant was placed under oath and read his rights as part of the group. *Id.* The IJ went into detail as to the purpose of the proceeding. *Id.* The lengthy recitation of rights included the ability to have counsel present, including available resources (Northwest Immigration Rights Project) for that purpose. *Id.* The IJ also discussed, in detail, the potential availability of two types of voluntary departure, how to obtain it, and the possibility of it being denied regardless of a request. *Id.* The IJ also explained to the group that each had the right to present any evidence that he or she wanted the Immigration Court to consider in the proceeding. *Id.* All of this information was conveyed to the Defendant and others in the Spanish language with a certified interpreter. *Id.* Finally, the IJ explained that if anyone disagreed, they had the right to appeal to a higher authority. *Id.*

The IJ then addressed each of the group members <u>individually</u>. *Id.* The IJ addressed Defendant, after addressing several other group members individually. The IJ asked Defendant if he understood his rights previously explained and if he had any questions. *Id.* Defendant indicated he did not have any questions. The IJ asked Defendant if he wanted to get an attorney. Hearing no request for an attorney, the IJ concluded he waived his right to an attorney.

///

Next, Defendant consented to the IJ reviewing records, identified as Exhibit 2, to consider the case. *Id.* Defendant acknowledged his prior conviction for Second Degree Assault - Domestic Violence. *Id.* Defendant agreed he was subject to removal from the United States because he entered illegally and had been convicted of a crime involving moral turpitude. *Id.* The IJ referenced the Defendant's prior 2013 conviction. The IJ then found that the crime involved a crime of moral turpitude ("CIMT") categorically. *Id.* The IJ asked Defendant if he had pointed a pistol at his girlfriend, to which he answered "yes." The IJ stated that it was "most certainly vile, depraved" and took it out of the ordinary assault of a domestic nature. *Id.*

The IJ next went through a list of questions asking whether Defendant had any fear of returning to his country, which country he preferred to be removed to, if he had any relatives living in the U.S., if he had any wife or kids, if anyone had filed a petition on his behalf, his medical health, and whether he was a victim of any crime. The IJ explained to Defendant that in exercising her discretion, the Immigration Court would deny both pre-conclusion and post-conclusion voluntary departure and that the court found Defendant lacked any positive offsetting equities. The IJ therefore found Defendant removable to Mexico as charged. Defendant contends that the deportation was obtained in violation of due process due to two alleged defects.

**B. Alleged Due Process Violations**

Defendant moves to dismiss the indictment charging him with being an alien after deportation in violation of 8 U.S.C. § 1326(a) on the basis that the December 10, 2013 removal order was fundamentally unfair or invalid under 8 U.S.C. §1326(d).

**1. Waiver of Attorney**

Defendant argues that the waiver of the right to counsel at his deportation proceeding was invalid. Specifically, Defendant bases his assertion on the following colloquy that took place between the IJ and Defendant:

> IJ: Sir, did you understand the rights that the Court explained?
>
> De La Cruz-Valles: Yes
>
> IJ: Any questions, sir?
>
> De La Cruz-Valles: No
>
> IJ: Do you want more time to see if you can get help with your case?
>
> De La Cruz-Valles: I don't think so.
>
> IJ: Alright the Court will find then sir that you are waiving your right to an attorney and that you wish to represent yourself.

ECF No. 22.

Defendant asserts that because his answer to the representation question was not a "yes" or "no" response, it was an invalid waiver.

The Government responds that the IJ was thorough, polite and helpful to the group and each group member individually, conspicuously

going over the rights each individual had at the subject proceeding. The Government referenced the IJ's thorough explanation of the right to counsel, the resources to obtain counsel, i.e. the Northwest Immigration Rights Project, and the individual's responsibility to contact legal representation.

"Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). "'Although IJs may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must [(1)] inquire whether the petitioner wishes counsel, [(2)] determine a reasonable period for obtaining counsel, and [(3)] assess whether any waiver of counsel is knowing and voluntary.'" *Ram v. Mukasey*, 529 F.3d 1238, 1241-42 (9th Cir. 2008) (alterations in original) (*quoting Biwot v. Gonzales*, 403 F.3d 1094, 1100 (9th Cir. 2005)).

This Court concludes that Defendant's waiver of counsel was valid and a not a violation of his due process right to counsel. A valid waiver of the right to counsel must be both considered and intelligent. *U.S. v. Ramos*, 623 F.3d 672 (9th Cir.2010). Under the facts before the Court, on November 4, 2013, Defendant received a Notice to Appear before an IJ in Tacoma, Washington. The Notice contained a "Certificate of Service" that indicated Defendant was

supplied with notice in person, in the Spanish language, and a list of attorneys that provided free legal services. ECF No. 21-1.

Defendant signed the Certificate of Service on November 4, 2013. A month later, at the deportation proceeding, Defendant received a competent explanation of his rights in a language he could understand during the group-rights explanation. Defendant had the benefit of listening to several others, before him, being individually asked whether each wanted to have an attorney and/or more time to seek the aid of counsel or legal assistance. When it was Defendant's turn to be individually asked about getting legal help, he stated, without hesitation or a tone of confusion, "I don't think so." The IJ then confirmed that she understood he was waiving his right to an attorney. Defendant did not communicate any confusion or hesitancy despite the IJ's confirmation that she understood he was waiving his right to an attorney.

The Court finds distinguishable *United States v. Ahumada-Aguilar*, 295 F.3d 943 (9th Cir. 2002), in which the Ninth Circuit held that an illegal-reentry defendant's waiver of the right to counsel in an immigration proceeding was not valid. The defendant in *Ahumada-Aguilar* was clearly confused, the record was murky, and that defendant did not receive any one-on-one questioning with the IJ, unlike Defendant De aa Cruz-Valles in the instant case.

///

///

### 2. **Failure to Inform of Eligibility For Pre-Conclusion Voluntary Departure**

Defendant asserts an IJ is obligated to inform an alien of his apparent eligibility for forms of relief, such as voluntary departure. Defendant conceded at the May 7, 2015 hearing that he was not eligible for post-conclusion voluntary departure. The thrust of Defendant's argument, however, is that he is eligible for pre-conclusion voluntary departure because he was not convicted of an aggravated felony. Defendant relies on a number of Board of Immigration Appeals ("BIA") cases where the BIA has merely agreed to remand to the IJ to consider whether to grant voluntary departure to aliens with fewer, greater, or similar negative equities as Defendant.

The Government asserts that Defendant was informed about two types of voluntary departure, however, in the exercise of her discretion, the IJ simply found that Defendant wasn't eligible for either type. The Government states the record from the immigration hearing indicates that the IJ described with detail to the group, including Defendant, the two forms of voluntary departure. The IJ asked Defendant a series of questions to determine whether he was eligible for this type of relief. *Id.* However, as a result of that questioning, the IJ denied any form of voluntary departure based on the nature of Defendant's prior offense and the lack of any positive offsetting equities. *Id.* Defendant acknowledged, when asked by the IJ, that he "pointed a pistol at his former girlfriend." The IJ stated this conduct took the offense outside of the ordinary domestic

violence and found him ineligible for voluntary departure of any kind. The Government argues that the IJ met the due process obligation to inform the Defendant of his apparent eligibility for relief from deportation pursuant to 8 C.F.R. §1240.49(a). In conclusion, the Government contends that such relief was discussed, considered, and denied.

**C. Analysis**

An IJ is obligated to inform an alien of his "apparent eligibility" for forms of relief such as voluntary departure. See 8 C.F.R. § 1240.11(a)(2); *see also United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." (internal quotation marks and citation omitted)). An IJ's failure to inform an alien of his apparent eligibility for voluntary departure can serve as the basis for a collateral attack on the underlying removal order under § 1326(d). *See, e.g., United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262 (9th Cir. 2013).

To challenge the validity of a removal order under § 1326(d), the defendant must first demonstrate that he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). Where "the IJ has failed to provide information about apparent eligibility for relief, we excuse the alien

from demonstrating that the alien exhausted any administrative remedies that may have been available." *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013) (internal quotation marks and citation omitted). Second, the defendant must demonstrate that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). Defendant need not make any further showing to satisfy this prong because "the [ ] failure to inform an alien regarding 'apparent eligibility' for relief [ ] deprive[s] the alien of the opportunity for judicial review." *Rojas-Pedroza*, 716 F.3d at 1262 (third alteration in original) (internal quotation marks and citation omitted). Third, the defendant must demonstrate that "the entry of the [removal] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

The Ninth Circuit has held that "[a]n underlying removal order is fundamentally unfair if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks and citation omitted). The resolution of Defendant's collateral attack on his removal proceedings therefore turns on whether the IJ's failure to advise him of his apparent eligibility for voluntary departure relief, which the IJ found he was ineligible for, was (1) a due process violation that was (2) prejudicial.

Based on the group advisement and the individual dialogue between the IJ and Defendant with Spanish translation, Defendant was informed that he could apply for voluntary departure. The next step, informing Defendant of his apparent eligibility, is perhaps more problematic. Although the IJ told Defendant and the others in the group, that each could apply for voluntary departure, when individually addressed, the IJ told Defendant that he would not get the relief of voluntary departure because of his particular criminal record. A reasonable person in Defendant's position would have been discouraged from applying for voluntary departure based on being told that he did not qualify for this relief. As a result, Defendant likely never had a genuine opportunity to apply for pre-conclusion voluntary departure or to present evidence of the factors favoring this relief. *See generally Campos-Granillo v. INS*, 12 F.3d 849, 852 n. 8 (9th Cir. 1993).

Defendant did not appeal the IJ's decision, and that also presents a potential stumbling block to his collateral attack. But because of the underlying potential defect in his deportation hearing identified above, it appears that his waiver of appeal was neither "considered" nor "intelligent," and it is therefore invalid under *Ubaldo-Figueroa*, 364 F.3d at 1049; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)(holding valid waiver must be "considered and intelligent"). As stated in *Arrieta*, "an alien who is not made aware that he has a right to seek relief necessarily has no meaningful

opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079. Consequently, Defendant is exempted from the exhaustion bar. *See United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir.2001), *cert. denied*, 534 U.S. 879, 122 S. Ct. 180, 151 L.Ed.2d 125 (2001)("The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of a right to an administrative appeal did not comport with due process.").

The Court finds that even if the IJ should have informed Defendant of his alleged, apparent eligibility for voluntary departure, which eligibility the IJ denied existed, to succeed on a collateral attack a Defendant must also show prejudice. Defendant does not have to show that he actually would have been granted relief. Defendant must show that he had a plausible ground for relief from deportation. *Arrieta*, 224 F.3d at 1079.

**D. Prejudice-Plausibility Determination**

To prevail on a motion to dismiss an indictment on the basis of an alleged due process defect in an underlying deportation proceeding, a defendant must not only establish that the defects in the deportation proceeding violated his due process rights, but also show that he suffered prejudice as a result of those defects. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)

The factors relevant to an IJ deciding whether to grant voluntary departure are the alien's negative and positive equities. *See Matter*

*of Gamboa*, 14 I. & N. Dec. 244, 248 (BIA 1972); *see also* *Rojas-Pedroza*, 716 F.3d at 1264-65. The negative equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999). The positive equities "are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id.*

Defendant has not shown he has met the statutory requirements for pre-conclusion voluntary departure[5] except for his conclusory statement that he is apparently eligible. Defendant also argues he had a plausible ground for relief from deportation because the BIA has upheld an IJ's grant of relief for individuals with similarly serious or worse convictions. ECF No. 21 at 15-16; ECF No. 33 at 5.

In *U.S. v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015), Defendant Valdez-Novoa similarly cited a number of BIA decisions in support of his position that it is plausible that an IJ would have granted voluntary departure to an alien with his mix of negative and positive equities. The Ninth Circuit Court responded that its survey of BIA decisions failed to reveal a single case where an IJ granted voluntary

[5] 8 U.S.C. § 1229c(a); 8 C.F.R. § 1240.26(b).

departure to an alien with a criminal history as recent and serious as the record compiled by Valdez-Novoa.

The Ninth Circuit warned that finding a similarly situated alien, who was afforded voluntary departure, does not automatically satisfy a finding of prejudice. The court stated in *Valdez-Novoa*:

> But the existence of a single case that is arguably on point means only that it is "possible" or "conceivable" that a similarly situated alien would be afforded voluntary departure. **That is plainly insufficient to warrant a finding that the defendant was prejudiced by the IJ's failure to advise him of his apparent eligibility for voluntary departure.** *See Barajas-Alvarado*, 655 F.3d at 1089 ("[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'"); *Cisneros-Resendiz*, 656 F.3d at 1018 (requiring the alien to demonstrate that "it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor" (citation omitted)).

*Valdez-Novoa*,780 F.3d at 920-21(emphasis added).

Defendant filed a Declaration in support of his motion to dismiss wherein he set forth what he considered to be a positive equity. ECF No. 21-1. Defendant stated that although his immediate family was in Mexico, he did live with a cousin in the United States. *Id.* The Ninth Circuit in *Valdez-Novoa* held that it was hardly dispositive that the defendant had family ties to the United States.[6] The only other arguable positive equity identified in Defendant's Declaration was

---

[6]Valdez-Novoa had spent most of his life in the U.S. and his parents and siblings lived in the U.S. Valdez-Novoa was not married nor had children in 1999, the relevant year.

that he worked in fields picking blackberries, a Mexican restaurant, and as a landscaper's assistant. The Declaration, however, does not indicate when he worked or the duration of work, leading the Court to speculate about such employment. ECF No. 21-1.

The Court does not find that the cases cited by Defendant show that it is plausible, rather than merely possible or conceivable, that he would have received voluntary departure relief. Similarly, Defendant argues that the IJ allegedly failed to conduct the proper analysis in determining that Defendant's conviction was a CIMT under *Ceron v. Holder*, 747 F.3d 773, 785 (9th Cir. 2014) (*en banc*). Defendant contends that he did not have a categorical CIMT and concludes that the IJ's determination was otherwise in error. ECF No. 33 at 6.

It is unclear to the Court how Defendant can conclude that the IJ's analysis was allegedly incorrect. Under *Ceron*, which was decided a year after Defendant's deportation hearing, it appears that the 2-step categorical approach leads to the same result as the IJ's CIMT determination. Defendant has not shown how the IJ was in error, even under *Ceron*. At the May 7, 2015 hearing, Defendant summarily states that the IJ's determination that his conviction was a CIMT was "an erroneous legal conclusion."[7]

///

[7]Defendant conceded at the hearing that he does not know what the IJ looked at to make the alleged erroneous determination.

Finally, the Ninth Circuit noted in *Valdez-Novoa* that "[a]n IJ would have considered the fact that the conduct that led to Valdez-Novoa's two felony convictions[8] **could have resulted in serious injury or death**." *Valdez-Novoa, 780 F.3d* at 920 (emphasis added). *See also Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (instructing IJs to consider, among other things, "the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident").

In the instant case, the IJ asked Defendant at the deportation proceeding, if he had pointed a pistol at his girlfriend. Defendant answered "yes." The IJ considered this as evidence of the undesirability of the applicant for voluntary departure. The IJ also concluded that there was a lack of positive offsetting equities. *See Campos-Granillo v. INS*, 12 F.3d 849 (9th Cir. 1994) (holding that in

---

[8] In 1996, Valdez-Novoa was convicted of felony assault likely to cause great bodily injury. According to the probation officer's report, Valdez-Novoa grabbed his ex-girlfriend by the hair and threw her onto the hood of his car. Valdez-Novoa then fought his ex-girlfriend's companion when he intervened. He was sentenced to 180 days in jail and three years' probation. *Valdez-Novoa*, 780 F.3d at 911. In 1998, while awaiting his removal proceedings, Valdez-Novoa was convicted of felony reckless driving causing great bodily injury and misdemeanor driving with a suspended license.

exercising discretion as to whether to grant or deny voluntary departure requests, the Immigration Judge must weigh both favorable and unfavorable factors by evaluating all of them).

The Court finds that the IJ advised Defendant of the possibility of two types of voluntary departure and gave him the opportunity to develop the issue as the IJ asked several questions concerning family ties, marriage to a U.S. citizen, children, etc. Defendant was also advised that he had the right to present evidence at the hearing. Assuming *arguendo* that the IJ should have informed Defendant of his alleged apparent eligibility for pre-conclusion voluntary departure in a different fashion, and that his removal proceedings did not comport with due process, the failure to do so did not render the proceedings "fundamentally unfair" under §1326(d)(3) because Defendant was not prejudiced by the alleged error. The Court does not find it is plausible that Defendant De la Cruz-Valles would have received voluntary departure relief given a conviction that could have resulted in serious injury or death to a household member and the lack of offsetting positive equities that can be considered by this Court.

Accordingly, for the reasons stated herein,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss the Indictment, **ECF No. 21**, filed April 8, 2015, is **DENIED.**

2. Pursuant to 18 U.S.C. § 3161(h)(1)(D), the Court **DECLARES EXCLUDABLE** from Speedy Trial Act calculations the period from **April 8,**

**2015**, the date Defendant moved to dismiss this case, through **May 14, 2015**, the date the Court disposed of the motion.

3. The trial date of **May 26, 2015** remains **SET.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to all counsel, the U.S. Probation Office, the U.S. Marshal, and the Jury Administrator.

**DATED** this 14th day of May, 2015.

***s/Lonny R. Suko***

LONNY R. SUKO
SR. UNITED STATES DISTRICT JUDGE